UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAQURE AL-BUKHARI,<br>      Plaintiff, | : : : : | |
| v. | : : | CASE NO. 3:16-cv-1267 (SRU) |
| DEPARTMENT OF CORRECTION, et al.,<br>      Defendants. | : : : : | |

**RULING ON EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff JaQure Al-Bukhari, currently incarcerated at Northern Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983. In his amended complaint Al-Bukhari claims that the defendants violated of his First Amendment right to freely exercise his religion and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, by denying him various religious accommodations. Al-Bukhari has now filed this motion for a temporary restraining order, asking the Court to order the defendants to remove his leg shackles while he showers, allow the water in his cell to run for five minutes at a time to accommodate ritual washing, and to permit him to buy Halal items from the commissary.[1] For the reasons that follow, the motion is denied.

---

[1] Al-Bukhari also complains about the alleged establishment of Christianity through prison-endorsed Christmas parties and food; however, those issues do not appear to be time sensitive.

I.        Allegations

Al-Bukhari is confined at Northern Correctional Institution ("Northern"). As a practicing Muslim, Al-Bukhari is required to perform Wudu, or ritual cleaning. The water in the sinks at Northern automatically shuts off after one minute and cannot be restarted for four minutes. This is not sufficient time for Al-Bukhari to complete the Wudu. Al-Bukhari also is required to perform Al-Ghusl, a religious bath. Inmates at Northern are required to shower wearing shackles. Al-Bukhari contends that he cannot perform Al-Ghusl while shackled.

Al-Bukhari alleges that the defendants will not provide him Halal food and will not permit him to purchase Halal food from the commissary or allow his family to purchase it for him from an approved vendor. As a result of disciplinary sanctions for his many disciplinary infractions, Al-Bukhari has lost commissary privileges until November 2020.

II.       Standard

District courts may grant interim injunctive relief in the form of a preliminary injunction or temporary restraining order "where a plaintiff demonstrates irreparable harm and meets one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (citations and internal quotation marks omitted). When the moving party seeks mandatory relief that "alters the status quo by commanding some positive act," as opposed to prohibitory relief that simply maintains the status quo, however, the burden is higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401,

406 (2d Cir. 2011) (citation and internal quotation marks omitted). The court should not grant mandatory injunctive relief absent "a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief." *Id.* (citation omitted). Here, Al-Bukhari seeks mandatory relief requiring the defendants to make changes to the prison administration and to override valid disciplinary sanctions. Thus, he must meet the higher standard.

Prison officials must be afforded broad discretionary authority because the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Prison officials must balance their responsibilities for maintaining internal order and discipline, securing the correctional facilities, and rehabilitating the inmates. The problems faced by prison officials are "complex and intractable," and "not readily susceptible of resolution by decree." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Sandin v. Conner,* 515 U.S. 472, 482 (1995) (reiterating that federal courts should "afford appropriate deference and flexibility" to state prison officials). The Prison Litigation Reform Act also imposes restrictions on preliminary injunctive relief. Any relief must be "narrowly drawn" and "extend no further than necessary to correct the harm;" it must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

III.   Analysis

   A.   Halal Meals

Al-Bukhari contends that the defendants have denied him permission to purchase Halal food from the commissary or an outside vendor. He argues that, as a practicing Muslim, he must eat Halal food. In opposition to this motion, the defendants have submitted the declarations of three Imams, all of whom state that the Common Fare menu offered by the Department of Correction is Halal. *See* Docs. ## 16-3, ¶¶ 4-5; 16-6, ¶¶ 4-5; & 16-15, ¶¶ 6-20. Thus, Al-Bukhari can meet his religious dietary requirements by registering for the Common Fare menu. He has not done so. *See* Docs. ## 16-3, ¶ 5; 16-6, ¶ 5. *See also, Vega v. Lantz*, 2009 WL 3157586, at *8 (D. Conn. Sept. 25, 2009) (Common Fare menu includes no items forbidden by Muslim religion). Because Al-Bukhari has an available vehicle to meet his religious dietary requirements, he cannot demonstrate irreparable harm if his motion is denied.

B.   Water

Al-Bukhari states that the water in his cell is on a timer. Water runs for one minute and then will not run again for four minutes. He argues that he cannot perform Wudu, a ritual washing in one minute. The Imams concur. *See* Docs. ## 16-3, ¶ 6 & 16-6, ¶ 6 ("Both Imam Salem and [Imam Usman] agree that 60 seconds may be too short for a complete Wudu"). However, the Imams suggested a way to complete wudu with the current water availability. They recommended that Al-Bukhari fill two cups with water before starting the Wudu. The minute of running water plus the two cups of water would be sufficient to complete the ritual. *See* Docs. ##16-3, ¶ 7; 16-6, ¶ 7. In addition, Captain Jackson submitted a declaration suggesting that, as an alternative to filling cups with water, Al-Bukhari could cover the drain in the sink as other inmates do when taking a sponge bath or washing clothing. In this way, Al-Bukhari could

4

accumulate a sufficient amount of water to complete the Wudu. *See* Doc. #16-7, ¶¶ 13–15. Although this is not the method he would prefer, the defendants have identified ways that Al-Bukhari can complete his ritual washing under current conditions. Thus, Al-Bukhari has not shown that he will suffer irreparable harm if his motion is denied.

    C.    <u>Showers</u>

Finally, Al-Bukhari argues that he cannot complete Al-Ghusl, which requires a complete washing of the body, while wearing shackles. Shackles are not applied so tightly that they cannot be moved up and down to wash above and below the restraint. *See* Doc. #16-7, ¶ 11. Imams Salem and Usman state in their declarations that Al-Bukhari can perform Al-Ghusl while showering in shackles. The ritual requires only complete washing, which can be completed by washing above, below, in and around the shackles. *See* Docs. ## 16-3, ¶ 9, 16-6, ¶ 9. Because he can perform the ritual under current conditions, Al-Bukhari has not shown that he will suffer irreparable harm if his motion is denied.

In addition, Captain Jackson states that Phase I Administrative Segregation inmates, like Al-Bukhari are required to be in full restraints when going to the showers for reasons of safety and security. The configuration of the shower door permits handcuffs, but not shackles, to be removed once the inmate is secured in the shower. *See* Doc. # 16-7, ¶¶ 4, 7-10. As noted above, correctional officials are afforded great deference in matters of prison administration. Thus, the Court will not intercede in matters of prison administration where Al-Bukhari has not demonstrated that he is suffering irreparable harm.

IV.	Conclusion

The defendants have presented evidence that the ability to eat only Halal food is within Al-Bukari's control and he can perform his religious washing rituals under current conditions. Although current conditions do not meet his preferences, Al-Bukhari has not shown that he will suffer irreparable harm, one of the requirements for an award of preliminary injunctive relief. The Emergency Motion for Temporary Restraining Order [**Doc. #12**] is **DENIED**.

**SO ORDERED** this 10th day of February 2017 at Bridgeport, Connecticut.

   /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge